# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

WARD W. KENYON,

        Plaintiff,

v.                                                              No. 2:09-cv-1126 MV/LAM

ALAMOGORDO MUNICIPAL SCHOOL
DISTRICT NUMBER ONE, aka ALAMOGORDO
PUBLIC SCHOOL DISTRICT, et al.

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss on the Basis of Qualified Immunity and Other Grounds (Doc. 23). As set forth below, this Court will grant in part and deny in part Defendants' Motion to Dismiss.

## FACTUAL BACKGROUND

In this case, Plaintiff Ward Kenyon alleges that Defendants deprived him of a protected property interest in continued employment in his position as Director of Business and Finance for the Alamogordo Public School District. Plaintiff's complaint is brought against the Alamogordo Public School District ("APS") and the Alamogordo Board of Education ("the Board"), as well as four individuals who are sued in both their individual and official capacities, namely: president of the Board Dr. Allan Rickman, Board Member Rhonda Cross, APS Superintendent Michael Harris, and APS Director of Human Resources Judy Jones. The complaint contains five counts. Count I (against all Defendants) and Count II (against APS and the Board) are brought pursuant to 42 U.S.C. § 1983 and allege violations of Mr. Kenyon's right

to due process as guaranteed by the Fourteenth Amendment of the United States Constitution.

Count III and IV are brought against APS; Count III alleges breach of contract and Count IV

alleges breach of the implied covenant of good faith and fair dealing.  And Count V, which is

brought against all Defendants, alleges that Defendants violated Mr. Kenyon's right to due

process as guaranteed by the New Mexico Constitution.

The pertinent facts as pled are as follows.  Mr. Kenyon was first employed by APS in

1994 and had a long period of continuous employment with APS.  (Doc. 1 (Complaint) at ¶¶ 16-

17).  In November 2007, Mr. Kenyon was hired by Superintendent Harris to serve as Director of

Business and Finance for APS and on July 1, 2008, Mr. Kenyon executed his most recent

employment contract with the APS.  (*Id.* at ¶¶ 20 & 28).  The contract provides that Mr. Kenyon

"shall be employed by [APS] for the period of time and in the position listed below": "Director-

Business/Finance" at a salary of $81,368.00 for the period beginning July 1, 2008 and ending

June 30, 2010.  (*Id.* at ¶ 29 & Ex. 1).  The contract further provides in paragraph 3:

> This contract and the parties hereto are and shall continue to be subject to
> applicable laws of the State of New Mexico and the existing rules and regulations
> of the State Secretary of Education and local Board of Education.  This contract
> may be canceled by the District for cause, including unsatisfactory work
> performance, incompetency, insubordination, physical or mental inability to
> perform the required duties or for any other good and just cause, provided that
> cancellation is effected only in accordance with New Mexico state statutes and
> applicable rules and regulations of State Secretary of Education and local Board
> of Education.

(*Id.* at ¶ 30 & Ex. 1).

In late January 2009, Mr. Kenyon's administrative assistant, Irma Sears, with his

approval, paid the interest on two outstanding bonds.  (*Id.* at ¶ 33).  As Mr. Kenyon later learned,

interest payments were also due on two additional bonds, but because no invoices had been

received for those obligations, Mr. Kenyon was unaware that the payments were due and did not

2

make the payments.  (*Id.* at ¶ 34).  While preparing an investment report on or about February 2, 2009, Carmen Spann, APS Budget Specialist, discovered that the interest on the two additional bonds had not been paid.  (*Id.* at ¶ 35).  Rather than reporting this to her supervisor, Mr. Kenyon, so that the error could be corrected, Ms. Spann (after retrieving the schedule of bond payments—referred to as the "bond book"—from Ms. Sears's office and confirming that an error had occurred) contacted APS Human Resources Director Judy Jones and informed her of the nonpayment.  (*Id.* at ¶¶ 36-47).  On or about February 2, 2009 or February 3, 2009, either Ms. Jones or Ms. Spann contacted Board Member Rhonda Cross and informed her about the missed bond interest payments.  (*Id.* at ¶ 49).  On February 3, 2009, Ms. Cross telephoned APS Superintendent Michael Harris, who was attending a meeting at which Mr. Kenyon was also present, to inform Superintendent Harris about the missed payments.  (*Id.* at ¶ 50).  Following his conversation with Ms. Cross, Superintendent Harris asked Mr. Kenyon if the bond interest payments had been made; he did not however identify the specific bonds as to which there was a concern.  (*Id.* at ¶ 51).  After conferring with Ms. Sears regarding the interest payments, and still unaware of the missed payments, Mr. Kenyon informed Superintendent Harris that the payments had been made.  (*Id.* at ¶ 52).

Following the meeting, Superintendent Harris telephoned Mr. Kenyon and notified him that a Board Member wanted to review the bond payments and would be visiting Mr. Kenyon's office.  (*Id.* at ¶ 53).  Late in the afternoon of February 3, 2009, Ms. Cross met with Mr. Kenyon and they examined the bond book together and determined that all of the amounts shown to be due on February 1, 2009 had been paid.  (*Id.* at ¶¶ 55-57).  At the time they reviewed the bond book, the pages evidencing the two additional bonds, for which interest had been discovered to be unpaid, were missing from the book.  (*Id.* at ¶ 58).

On or about February 5, 2009, Ms. Spann, accompanied by Judy Jones, met with Superintendent Harris regarding the missed bond payments.  (*Id.* at ¶ 59).  Superintendent Harris instructed Ms. Spann to make the bond payments and not to communicate information regarding the missed payments to Mr. Kenyon.  (*Id.* at ¶¶ 60-61).

On February 6, 2009, Superintendent Harris met with Mr. Kenyon and informed him that he was being placed on paid suspension pending an investigation into charges that Mr. Kenyon had failed to make interest payments on outstanding APS bonds, during which time Mr. Kenyon was not to contact APS employees or to report to any APS site.  (*Id.* at ¶¶ 62-63).  Ms. Jones was also present at the meeting.  (*Id.* at ¶ 62).  After the meeting, Mr. Kenyon was escorted to his office by a school security officer and allowed to collect his personal belongings before leaving the premises.  (*Id.* at ¶¶ 65-68).

Thereafter, Superintendent Harris hired Jack Jenkins, a former District Interim Director of Business and Finance, to oversee the Business and Finance Department and to conduct an investigation into the missed bond payments.  (*Id.* at ¶ 71).

On February 16, 2009, Mr. Kenyon again met with Superintendent Harris and Ms. Jones.  (*Id.* at ¶ 72).  During this meeting, Superintendent Harris informed Mr. Kenyon that he would recommend to the Board that Mr. Kenyon be discharged if Mr. Kenyon did not tender his resignation.  (*Id.* at ¶ 73).  By letter dated February 25, 2009, Mr. Kenyon requested reinstatement to his position as Director of Finance and, by a letter of the same date, Superintendent Harris notified Mr. Kenyon that he was recommending to the Board that Mr. Kenyon be discharged.  (*Id.* at ¶¶ 75-76).  In his letter of February 25, 2009, Superintendent Harris cited six reasons for his recommendation of discharge, including Mr. Kenyon's failure to timely pay interest on the bonds and alleged budget irregularities raised by Mr. Jenkins

4

following his review of Business and Finance Department operations.  (*Id.* at ¶ 76).  Mr. Kenyon

alleges that the charges regarding budget irregularities were unfounded but that he did not have

sufficient time to address these allegations during his discharge hearing.  (*Id.* at ¶ 77).

On February 26, 2009, Ms. Jones posted a notice of vacancy for the position of Business

and Finance Coordinator; the job duties listed in the notice incorporated those duties previously

performed by Mr. Kenyon as Director of Business and Finance.   (*Id.* at ¶¶ 78-79).  The new

position of Business and Finance Coordinator was not created according to Board policy, which

requires any new job position to be approved by the Board.   (*Id.* at ¶ 80).  Before a hearing had

taken place on Superintendent Harris's recommendation to discharge Mr. Kenyon, John Warfield

was hired to fill the new full-time, permanent position of Business and Finance Coordinator; Ms.

Spann was a member of the hiring committee that recommended Mr. Warfield be hired to fill the

position.  (*Id.* at ¶¶ 81-82).  Mr. Kenyon's position was thereafter eliminated from APS's

Administrative Organization Chart in July of 2009.   (*Id.* at ¶ 83).

By letter dated March 2, 2009, Mr. Kenyon requested a hearing on Superintendent

Harris's recommendation of discharge and a hearing was held before the Board on June 8, 2009.

(*Id.* at ¶¶ 84 & 95).  Mr. Kenyon alleges that there were a number of deficiencies in the hearing.

First, Mr. Kenyon alleges that prior to the hearing, his counsel requested the production of

documents from APS, including communications between APS employees, certain documents

related to the budgeting process, and copies of documents related to the hiring of the Business

and Finance Coordinator.  (*Id.* at ¶ 86).  APS, however, did not produce all of the documents

requested by Mr. Kenyon and Board President, Dr. Allan Rickman, denied Mr. Kenyon's motion

to compel the production of the requested documents.  (*Id.* at ¶¶ 87-88).  Among the documents

not produced were files that Mr. Kenyon had kept in a box in his office, which included the

working files he had used to create the budget, copies of APS contracts, and copies of communications with the Public Education Department regarding budgeting matters. (*Id.* at ¶¶ 89-90). In March 2009, these documents were shredded at the direction of Mr. Jenkins, in alleged violation of New Mexico's Public Records Act. (*Id.* at ¶¶ 91-92). Second, Mr. Kenyon contends that during pre-hearing discovery, he sought to depose Ms. Cross, but Dr. Rickman refused to allow her deposition. (*Id.* at ¶¶ 93-94). Third, Mr. Kenyon contends that the two and one-half hours total time he was allotted at the hearing (to which he voiced an objection) was insufficient to make an opening statement, to cross-examine the three witnesses presented by Superintendent Harris, and to present his own case. (*Id.* at ¶¶ 96-100). Specifically, Mr. Kenyon contends that following the conclusion of Superintendent Harris's case and Mr. Kenyon's counsel's cross-examination of the witnesses called by Superintendent Harris, he was left with only thirty-one minutes to present evidence (which was to include his testimony, as well as the testimony of nine witnesses). (*Id.* at ¶ 99). As a result of time limitations, counsel for Mr. Kenyon was only able to briefly present testimony from Mr. Kenyon and Mr. Kenyon's Administrative Assistant, Irma Sears. (*Id.* at ¶ 100).

The Board issued its decision in an open meeting on June 17, 2009 and in a written decision issued June 24, 2009. (*Id.* at ¶ 101). In the written decision, the Board states that it "finds that the Superintendent has demonstrated by the preponderance of the evidence that just cause exists for the discharge of Mr. Kenyon pursuant to NM Statutes Annotated Section 22-10A-27," but that it "is persuaded that Mr. Kenyon had rights to supervision and correction procedures pursuant to NM Statutes Annotated 22-10A-30." (*Id.* at ¶¶ 102-03). The decision therefore states that it is "the conclusion of the Board that Mr. Kenyon remain employed by the Alamogordo Public Schools subject to any and all terms and conditions set forth by the

Superintendent [and] that Mr. Kenyon remain on administrative leave until such time that the Superintendent schedules a conference to outline all terms and conditions with Mr. Kenyon." (*Id.* at ¶ 104).  Mr. Kenyon contends that the Board's decision foreclosed any appeal.  (*Id.* at ¶ 105).

On July 20, 2009, Mr. Kenyon met with Superintendent Harris and Ms. Jones.  (*Id.* at ¶ 109).  During the meeting, he was informed that he would not be allowed to return to his position as Director of Business and Finance but instead would be assigned to a position as Grant Writer and would be required to work from his home.  (*Id.* at ¶¶ 110-11).  Mr. Kenyon alleges that at no time previously had any APS employee been required to work from home.  (*Id.* at ¶ 112).  Superintendent Harris further informed Mr. Kenyon that he would not be placed on a growth plan nor would he be allowed to return to his position as Director of Business and Finance in the future.  (*Id.* at ¶ 113).  Later that day, by letter to Superintendent Harris, Mr. Kenyon again requested that he be allowed to resume his duties as Director of Business and Finance and be allowed to correct any alleged performance deficiencies.  (*Id.* at ¶ 115).  By letter dated August 12, 2009, Superintendent Harris responded that Mr. Kenyon was not being terminated or demoted, but reassigned.  (*Id.* at ¶ 116).

On August 26, 2009, counsel for Mr. Kenyon wrote to the Board's attorney, complaining of Superintendent Harris's conduct and requesting that the Board intervene in the "reassignment" of Mr. Kenyon.  (*Id.* at ¶ 118).  Upon information and belief, Mr. Kenyon alleges that this complaint was forwarded to Board President, Dr. Rickman.  (*Id.* at ¶ 119).  By letter dated September 9, 2009, counsel for the Board responded, stating that the Board had concluded in its June 24, 2009 decision that Mr. Kenyon should remain employed by APS but did not specify a position.  (*Id.* at ¶ 120).  Counsel for the Board further indicated that she had discussed the

assignment and job description for the position of Grants Administrator with Superintendent Harris.  (*Id.* at ¶ 121).

Mr. Kenyon subsequently assumed the position of Director of Grants Administration, though stated he was doing so under protest and without waiving any of his rights under his contract, and has performed the duties assigned to him.  (*Id.* at ¶¶ 128 & 130).  As Director of Grants Administration, Mr. Kenyon is required to work from his home with equipment provided by APS, is not reimbursed for any costs he incurs in operating an office from his home, and has been told that he is not allowed to participate in the District Leadership Team Committee and will not be provided with professional development training.  (*Id.* at ¶¶ 123 & 127).  Mr. Kenyon further alleges that during a meeting held in approximately July 2009, Mr. Warfield, Coordinator of Business and Finance, instructed the staff of the Department that they were to have no contact with Mr. Kenyon.  (*Id.* at ¶ 135).  Mr. Kenyon also alleges that he "suffered a significant pecuniary loss as a result of the change in his position . . . as he must pay from his salary all expenses he incurs in the maintenance of his home office including all taxes, insurance, and utility costs."  (*Id.* at ¶ 138).

On January 29, 2010, Defendants filed the instant Motion to Dismiss on the Basis of Qualified Immunity and Other Grounds.  (Doc. 23).  In their Motion, Defendants argue that (1) Plaintiff's Complaint does not meet the pleading requirements in that it does not isolate the alleged unconstitutional acts of each defendant; (2) that the public hearing afforded to Mr. Kenyon more than meets the protections afforded by the U.S. Constitution and therefore Mr. Kenyon's Fourteenth Amendment due process claims should be dismissed as he was given adequate procedural due process; (3) that Plaintiff has failed to state a claim for violation of his due process rights under the Fourteenth Amendment as no protected property interest was

implicated by his reassignment; (4) that Plaintiff's vicarious liability claims cannot stand as there is no vicarious supervisory liability for § 1983 claims; (5) that Plaintiff's breach of contract claim fails both because the Board found just cause to discharge Plaintiff and thus cancel the contract and because even assuming arguendo that a breach existed, Plaintiff suffered no damages; (6) that Plaintiff's claim for breach of the covenant of good faith and fair dealing is barred pursuant to NMSA 1978, § 37-1-23(A) and is not supported by the averred facts; (7) that there is no waiver of sovereign immunity for Plaintiff's state constitutional due process claims; and (8) that the individual defendants are entitled to qualified immunity.

## DISCUSSION

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotation marks and citation omitted). This same standard also applies to a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223 (10th Cir. 2009).

---

[1] As Defendants brought the instant Motion to Dismiss after answering the Complaint, it is more properly treated as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Fed. R. Civ. P. 12(b)(6), 12(c) & 12(h)(2); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir.2002).

Additionally, in this case, the individual Defendants have raised the defense of qualified immunity.  The qualified immunity doctrine shields government officials from suits for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Accordingly, to survive a motion to dismiss where qualified immunity is at issue, "plaintiffs must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir.2008).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808 (2009); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.").

## I.     Plaintiff's § 1983 Due Process Claims (Counts I and II)

"To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded."  *Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1162 (10th Cir. 2007).  Here, Defendants argue that Plaintiff's § 1983 due process claims fail both because Mr. Kenyon did not have a property interest in his position as Director of Business and Finance and because Mr. Kenyon was afforded adequate due process.  Defendants further argue that the due process claims against the individual Defendants should be dismissed on the basis of qualified immunity and because the Complaint improperly lumps Defendants together, failing to

provide each of the individual Defendants with fair notice of the grounds for the claims made against him or her.  *Robbins*, 519 F.3d at 1249-50 (recognizing that in the context of § 1983 cases involving multiple defendants it is important that "the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state").  As to the claims against APS and the Board, Defendants additionally argue that these claims fail because there is no vicarious supervisory liability under § 1983.

### A.    Mr. Kenyon's Alleged Property Interest

The parties agree that Mr. Kenyon had a property interest in his public employment. However, while Mr. Kenyon was removed from his position as Director of Business and Finance, he remained employed by APS as Director of Grants Administration, a position in which he received the same salary, but was required to work from home.  Accordingly, it is not enough for Mr. Kenyon to allege that he had a property interest in his public employment, rather he must establish that he had a property interest in his position as Director of Business and Finance.[2]

In order to establish a property interest in his position, Mr. Kenyon must establish "'more than a unilateral expectation of it,'" rather he must establish that he has "'a legitimate claim of

---

[2]   While at times the parties have referred to Mr. Kenyon's removal from his position as a "discharge," Mr. Kenyon remained employed by APS following his removal but in a different capacity.  Accordingly, the term "discharge" is misleading.  This Court notes that NMSA 1978, § 22-10A-2 defines "discharge" as "the act of severing the employment relationship with a certified school employee prior to the expiration of the current employment contract."  While the terms of Mr. Kenyon's employment relationship with APS may have changed in that he was removed as Director of Business and Finance, Mr. Kenyon remained employed by APS as Director of Grants Administration.  In its analysis, this Court focuses on the substance of the allegations made in the Complaint, rather than the particular words used by the parties to label what transpired.

entitlement'" to continued employment in the position.  *Stears*, 491 F.3d at 1163 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)); *see also Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) ("The standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment."). "Such an interest arises not from the Due Process Clause of the Constitution itself, but is 'created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract.'"  *Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007) (quoting *Carnes v. Parker*, 922 F.2d 1506, 1509 (10th Cir. 1991)).  A property interest arises where such independent sources place substantive restrictions on a government actor's ability to make personnel decisions.  *Hennigh*, 155 F.3d at 1253.  "The same analysis applied to determine the existence of a property right in employment is utilized to determine if there is a property right in a particular employment status."  *Id.* at 1254.

"The general rule is that no protected property interest is implicated when an employer reassigns or transfers an employee absent a specific statutory provision or contract term to the contrary."  *Hulen v. Yates*, 322 F.3d 1229, 1240 (10th Cir. 2003) (internal quotation marks omitted); *accord Potts v. Davis Cnty.*, 551 F.3d 1188, 1192 (10th Cir. 2009); *see also Anglemyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 539 (10th Cir. 1995) (collecting cases and noting that the "overwhelming weight of authority" is that, absent a specific statutory or contractual provision to the contrary, no protected property interest is implicated when an employer reassigns or transfers an employee).  However, "the general rule is not absolute if an employee can point to a specific contractual provision and surrounding circumstances establishing a property interest."  *Hulen*, 322 F.3d at 1240-44 (finding Colorado State University faculty member had a property interest in his departmental assignment based, in part, on provisions contained within a faculty manual);

*see also Teigen*, 511 F.3d at 1079 (assuming provision of Colorado Constitution providing that
"[p]ersons in the personnel system of the state shall hold their respective positions during
efficient service or until reaching retirement age" and limiting a public employer's discretion to
"otherwise disciplin[e]" an employee created a property interest in a particular employment
status); *Hennigh*, 155 F.3d at 1254-55 (police officer had property interest in his rank created by
Oklahoma law in the form of a collected bargaining agreement contracted pursuant to state
legislation).

Moreover, while New Mexico recognizes a property interest in public employment that
property interest is generally tied to the financial benefits that flow from the position, and not to
other aspects of the job, such as job title or duties.  In *Board of Education of Carlsbad Municipal
Schools v. Harrell*, 882 P.2d 511, 518-19 (N.M. 1994), the Supreme Court of New Mexico held
that the suspension of a school district superintendent with pay did not violate his due process
rights as his contract and the New Mexico statute establishing the standards and procedures for
discharge of certified school employees "afforded him only the right to be fully compensated; he
had no right to occupy the office of superintendent."  Accordingly, the Court found that the
superintendent's "claim of entitlement to employment was satisfied so long as he continued to
receive the full compensation due under his contract."  *Id.*  In reaching its decision in *Harrell*,
the Supreme Court of New Mexico cited *Royster v. Board of Trustees of Anderson County
School District Number Five*, 774 F.2d 618, 621 (4th Cir. 1985), a case in which the Fourth
Circuit held that though the Board of Trustees for a school district had breached its contractual
obligation in the procedure it used in releasing a superintendent from his duties, no property
interest was implicated where the dismissed superintendent continued to receive his salary, as his
contract afforded him only the right to be fully compensated and not the right to occupy the

13

office of superintendent.  *Harrell*, 882 P.2d at 518.

Plaintiff cites *Lovato v. City of Albuquerque*, 742 P.2d 499 (N.M. 1987), a case that was decided seven years prior to *Harrell*, for the proposition that New Mexico recognizes that a public employee with an express right to a position, grade or pay rate has a protected interest in continued employment in the same status.  In *Lovato*, the Supreme Court of New Mexico held that a public employee who had spent thirteen years in an assignment position, which had resulted in a five percent pay raise, had a property interest in his assignment position notwithstanding the fact that City rules provided that assignment positions were not permanent and gave administrative heads the discretion to reassign people at any time.  742 P.2d at 502. When the City decided to remove the employee, Mr. Lovato, from assignment status, he lost the extra pay.  *Id.* at 500.  Although the Supreme Court of New Mexico held that "Lovato's interest in continued employment in the same position clearly rose to the level of a constitutionally protected property interest," read in context, the additional salary associated with the position was clearly important to the ruling, and in reaching its decision, the Court specifically mentioned Mr. Lovato's grade and pay rate in the assigned position, as well as the City's action in retaining him in the position for thirteen years.  *Id.* at 502; s*ee also Chavez-Rodriguez v. City of Santa Fe*, No. CIV 07-0633, 2008 WL 5992271, at *11-15 (D.N.M. Oct. 9, 2008) (holding that the transfer of an employee that would result in loss of supervisory responsibilities but no change in pay did not implicate a property right and explaining that"[r]ead together, [*Lovato* and *Harrell*] stand for the proposition that New Mexico recognizes a property interest in public employment, but that it is an interest tied to the financial benefits that flow from the position, and not in other aspects of a job, such as the title, prestige, or level of power and responsibility accompanying a particular position.").

14

While the above cases provide guidance, in this case the inquiry must focus on whether Mr. Kenyon had a legitimate claim of entitlement to his position in light of his contract and the relevant statutes and policies applicable to him.  Mr. Kenyon alleges that his employment contract secured his employment in the position of Director of Business and Finance through the contract period ending June 30, 2010 and created a protected interest in continued employment in that position.  As noted above, the contract provides that Mr. Kenyon "shall be employed by [APS] for the period of time and *in the position* listed below": "Director-Business/Finance" at a salary of $81,368.00 for the period beginning July 1, 2008 and ending June 30, 2010.  (Doc. 1 at ¶ 29 & Ex. 1 (emphasis added)).  Paragraph 3 of the contract further provides that the contract is "subject to applicable laws of the State of New Mexico and the existing rules and regulations of the State Secretary of Education and local Board of Education" and that it "may be canceled by the District for cause . . . provided that cancellation is effected only in accordance with New Mexico state statutes and applicable rules and regulations of State Secretary of Education and local Board of Education."[3]  (*Id.* at ¶ 30 & Ex. 1).  *See also* NMSA 1978, § 22-10A-21 (employment contracts between local school boards and certified school personnel shall specify the terms of service, the salary to be paid, and the causes for termination of the contract); Alamogordo Board of Education Policy § 5.6.10.1 (same).

Further, in opposing the Motion to Dismiss, Mr. Kenyon argues that while Alamogordo Board of Education Policy allows the superintendent to assign or transfer an employee, "assignment" is defined as the "placement of an employee in a work site position" and transfer is defined simply as the "reassignment of an employee from one work site to another work site."

_____

[3] This Court notes that the language in paragraph 3 of Mr. Kenyon's contract is virtually identical to the language contained in the superintendent's contract in *Harrell*.  882 P.2d at 517.

Alamogordo Board of Education Policy §§ 5.13 & 5.19.  Mr. Kenyon argues that there are no provisions in the Alamogordo Board of Education Policy allowing for reassignment to a new position during a contract term.

Finally, this Court notes that Mr. Kenyon had alleged that as a result of his reassignment, he "has suffered a significant pecuniary loss," as he now must work from home and "pay from his salary all expenses he incurs in maintenance of his home office including all taxes, insurance, and utility costs."  (*Id.* at ¶ 138).  He further avers that at no other time has any APS employee "been required to work from his own home and provide and pay for his own office accommodations."  (*Id.* at ¶ 112).[4]

While it presents a close question, this Court finds that Plaintiff's allegations, taken together, sufficiently allege a property interest so as to survive a motion to dismiss as to Plaintiff's claims against APS and the Board.  However, the Court finds that the allegations are insufficient to put the individual Defendants, whom have asserted that they are entitled to qualified immunity, on notice that Mr. Kenyon had a clearly established property right of which he was deprived.  While Mr. Kenyon has alleged that as a result of the transfer he suffered a financial loss due to his having to absorb the costs of operating a home office, there is no allegation that his salary itself changed.  In light of the general rule that no protected property interest is implicated when an employer merely reassigns an individual absent a specific

---

[4]  On reply, Defendants contend that Mr. Kenyon's allegations regarding the alleged pecuniary loss he suffered are "wholly conclusory" and "would appear to fall into the trivial category" (Doc. 32 at pp. 6-7).  *See Potts v. Davis Cnty.*, 551 F.3d 1188, 1193 (10th Cir. 2009) (cited by Defendants and recognizing that employees do not have a protected property interest in "every nuance and detail of their particular position" and concluding that a law officer did not have a property interest in "differential pay").  At this stage in the proceeding, however, the Court finds that Plaintiff's allegations regarding economic harm are sufficiently detailed and must be accepted as true for purposes of this Motion to Dismiss.

statutory provision or contract term to the contrary and the *Harrell* opinion, in which the

Supreme Court of New Mexico found that a school district superintendent's property interest

was only in receiving the full compensation he was due under his contract and not in occupying

the office of superintendent, this Court finds that Mr. Kenyon's § 1983 claims for violation of his

due process rights should be dismissed as to Dr. Rickman, Ms. Cross, Superintendent Harris, and

Ms. Jones to the extent each is sued in his or her individual capacity.  These individuals are

entitled to qualified immunity, as it was not clearly established that the reassignment of

Mr. Kenyon, without a corresponding reduction in his salary,[5] would violate his due process

rights.[6]

> ### B.    The Process Accorded Mr. Kenyon

Defendants also argue that even if Mr. Kenyon had a property interest, he was accorded

ample due process in connection with his removal from his position in that he was provided a

constitutionally adequate pre-discharge hearing before the Board and failed to avail himself of

the opportunity to appeal the Board's decision to an independent arbitrator.

"An essential principle of due process is that a deprivation of life, liberty or property be

preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland*

---

[5]  Notably, in Mr. Kenyon's reply in support of his Motion for Partial Summary Judgment, he acknowledges the long line of authority (both in New Mexico and in other jurisdictions) that suggests an employee's property interest in public employment is generally tied to the financial benefits that flow therefrom and not in other aspects of the job.  (Doc. 37 at pp. 3-5).  This authority serves to further reinforce this Court's conclusion that Mr. Kenyon has not alleged a violation of a clearly established right.

[6]  As the claims brought against Dr. Rickman, Ms. Cross, Superintendent Harris, and Ms. Jones in their official capacity are redundant of the claims brought against APS and the Board, this Court will also dismiss these claims.  *See, e.g., Bennett v. Johnson*, No. 09-CV-612, 2010 WL 2465499, at *5 (N.D. Okla. June 11, 2010).

*Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted).  In the context of government employment, this principle requires that some kind of hearing be held prior to the discharge of an employee who has a constitutionally protected property interest in his employment.  *Id.*  "For government employees, such a hearing requires:  (1) oral or written notice [to the employee] of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity [for the employee] to present his side of the story."  *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (alterations in original; internal quotation marks omitted).  Though a pretermination hearing is required, it need not be elaborate; the formality and procedural requisites for the pretermination hearing will vary, depending upon the importance of the interests involved and the nature of any subsequent proceedings.  *Loudermill*, 470 U.S. at 545; *see also West v. Grand Cnty.*, 967 F.2d 362, 367 (10th Cir. 1992) (recognizing "[t]he standards for a pretermination hearing are not stringent because of the expectation that a more formal post-termination hearing will remedy any resulting deficiencies" and noting that the Court has held as sufficient a pretermination warning and an opportunity for a face-to-face meeting with supervisors).

In most instances, a post-termination hearing will also be required.  *Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005).  In assessing the constitutionality of a post-termination procedure, it must be viewed in light of the pre-termination procedures it follows.  *Id.*  "When the pre-termination process offers little or no opportunity for the employee to present his side of the case, the procedures in the post-termination hearing become much more important," as they represent "the only meaningful opportunity the employee has to challenge the employer's actions."  *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996); *see also West*, 967 F.2d at 367 (recognizing that where the definitive fact-finding occurs at the

18

post-termination hearing, there is a need for more formal due process protections).  Where, however, a pretermination hearing is the only hearing afforded to an individual, the due process inquiry is governed by the more stringent requirements generally applied to post-termination hearings.  *McClure v. Indep. Sch. Dist*, 228 F.3d 1205, 1211 (10th Cir. 2000).

Plaintiff acknowledges in his Complaint that he received written notice of the charges and was provided a pre-discharge hearing before the Board, at which time he was represented by counsel, permitted to cross-examine witnesses offered by his employer, and allowed to present his side of the story.  (Doc. 1 at ¶¶ 75-76, 95-100).  Defendants contend that dismissal of Plaintiff's due process claim is appropriate because this is all that is required at a pre-discharge hearing where a post-termination proceeding is available before an impartial arbitrator.  Mr. Kenyon, however, alleges that the decision of the Board foreclosed any appeal of the Board's finding (*id.* at ¶ 105) and that he thus was denied any post-discharge hearing.  He further alleges that there were a number of procedural irregularities in the proceedings that amounted to violations of his due process rights.  For example, he alleges that a permanent replacement was hired prior to the hearing (*id.* at ¶¶ 78-83), from which one could infer that a decision had already been made prior to the hearing regarding Mr. Kenyon's discharge.  He also alleges that he was denied certain discovery prior to the hearing, including the opportunity to depose Ms. Cross, a Board Member.  (*Id.* at ¶¶ 85-88, 93-94).[7]  As Mr. Kenyon alleges that he reviewed the bond book with Ms. Cross at a time when the pertinent pages were missing (*id.* at ¶¶ 55-58), one

---

[7]  While Mr. Kenyon's Complaint includes allegations that he was denied certain documents that he requested and that these documents were subsequently shredded at the direction of Mr. Jenkins, Interim Director of Business and Finance (Doc. 1 at ¶¶ 85-92), it does not allege that any of the individual Defendants named in the Complaint had involvement in the decision to shred the documents.

could infer that Ms. Cross could have confirmed Mr. Kenyon's contention that he was unaware of the missed bond payments.  Mr. Kenyon additionally argues in opposing the Motion to Dismiss that as a material witness who had inserted herself into the controversy, Ms. Cross, a potential decision-maker, was biased.  Finally, he contends that the two and one-half hours he was allotted at the hearing was insufficient to present his side of the story.  (*Id.* at ¶¶ 96-100).

The parties agree that Mr. Kenyon received a pre-discharge hearing pursuant to § 22-10A-27 of the New Mexico School Personnel Act.  NMSA 1978, § 22-10A-27.  Section 22-10A-27 provides that prior to discharge for just cause, a certified school employee must be served with written notice of the superintendent's intent to recommend discharge, including the reasons for the recommendation, and has the right to a pre-discharge hearing before the local school board.  *Id.*  Pursuant to § 22-10A-28(A) of the New Mexico School Personnel Act, "[a] certified school employee aggrieved by a decision of a local school board or governing authority to discharge him after a discharge hearing held pursuant to Section 22-10-17 NMSA 1978 [recompiled as § 22-10A-27] may appeal the decision to an independent arbitrator."  NMSA 1978, § 22-10A-28(A).  The statute further provides that "[a] written notice of appeal shall be submitted to the local superintendent or administrator within five working days from the receipt of the copy of the written decision of the local school board or governing authority."  *Id.*  The Act thus contemplates both a pre-discharge hearing and a post-discharge appeal.

Defendants maintain that Mr. Kenyon was entitled to appeal the decision of the Board, but simply failed to do so.  Assuming that Mr. Kenyon was entitled to a post-discharge proceeding in accordance with § 22-10A-28, which includes a *de novo* hearing before an independent arbitrator at which the local school board bears the burden of proof and at which either party may call and examine witnesses, cross-examine witnesses and introduce exhibits, as

well as the opportunity pre-hearing discovery, it would appear that a number of Mr. Kenyon's

complaints regarding procedural irregularities during the pre-discharge hearing would be

insufficient to state a claim.  NMSA 1978, § 22-10A-28; s*ee, e.g., Riggins*, 572 F.3d at 1108

(recognizing that at the pre-discharge phase an employee need only be given notice and an

opportunity to respond and noting that the Tenth Circuit has upheld as sufficient informal

proceedings such as pretermination warnings and an opportunity for a face-to-face meeting with

supervisors).  Mr. Kenyon, however, argues that the decision of the Board foreclosed any appeal

by him and thus his pre-discharge hearing must be held to a more stringent standard.

Mr. Kenyon does not allege that he attempted to file a notice of appeal.  However, his

Complaint alleges that the decision he received from the Board states that it is "the conclusion of

the Board that Mr. Kenyon remain employed by the Alamogordo Public Schools subject to any

and all terms and conditions set forth by the Superintendent."  (Doc. 1 at ¶ 104).  As  NMSA

1978, § 22-10A-28(A) provides that an employee "aggrieved by a decision of a local school

board . . . to discharge him" may appeal the decision and "discharge" is defined by NMSA 1978,

§ 22-10A-2(A) as "the act of severing the employment relationship with a certified school

employee prior to the expiration of the current employment contract," it is arguable that

Mr. Kenyon did not have the right to appeal as he was not "discharged."  Moreover,

Mr. Kenyon's Complaint further alleges that while the written Board decision was issued on

June 24, 2009, indicating that he would remain employed by APS "subject to any and all terms

and conditions set forth by the Superintendent" and that he would remain on administrative leave

until such time as he met with the Superintendent, he did not meet with Superintendent Harris

until July 20, 2009, at which time he was informed he was being reassigned.  (Doc. 1 at ¶¶ 101,

104, 106-10, 113).  Thus, based on the allegations contained in the Complaint, one could infer

that Mr. Kenyon did not fully understand the implications of the Board's decision until after the

five-day window for filing a notice of appeal had expired.  Finally, Mr. Kenyon's Complaint

alleges that the Board declined to intervene in Superintendent Harris's reassignment of

Mr. Kenyon.  (*Id.* at ¶¶ 118-20).

Based on the above, this Court finds that Mr. Kenyon has sufficiently alleged that he was

deprived of a post-discharge hearing before an impartial arbitrator.  As Defendants' Motion to

Dismiss is premised on the contention that Mr. Kenyon was entitled, but declined, to appeal the

Board's decision and does not argue the adequacy of the hearing provided in light of the

standards applicable where no post-termination proceedings are permitted, this Court need not

further address the specific alleged deficiencies in the hearing Mr. Kenyon received at this stage

in the proceeding.

### C.      Municipal Liability

Finally, citing *Iqbal,* Defendants contend that Plaintiff's § 1983 claims against APS and

the Board fail to the extent that they are based on vicarious supervisory liability.  *See Iqbal*, 129

S. Ct. at 1948-49 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must

plead that each Government-official defendant, through the official's own individual actions, has

violated the Constitution.").  Defendants are correct that APS and the Board cannot be held

liable for constitutional violations by Superintendent Harris based merely on allegations that

they had supervisory authority over him.  Mr. Kenyon's Complaint, however, is not limited to

allegations that APS and the Board had supervisory authority over Superintendent Harris.

Mr. Kenyon has alleged, *inter alia*, that the Board has ultimate policymaking authority over

personnel decisions for APS, that the Board oversaw the proceeding at which certain alleged due

process violations occurred, that the Board's written decision facilitated the removal of

Mr. Kenyon from his position and effectively denied him any opportunity to appeal, and that the Board asserted that Mr. Kenyon's reassignment was in conformance with its written decision. (Doc. 1 at ¶¶ 88, 94-105, 118-21, 129).  Notably, pursuant to NMSA 1978, § 22-10A-27, the authority to discharge a certified school employee for just cause rests with the local school board and it is the local school board that bears the responsibility for conducting a pre-discharge hearing.  Accordingly, the Board would appear to have both direct involvement in the alleged violations and final policymaking authority as to employee discharges for APS.  *See, e.g., Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1286 (10th Cir. 2007) (as Administrative Control Board was the final policymaker on personnel matters for the Uintah Health Care Special Service District (a political subdivision formed by the County), its decision to terminate an employee in alleged violation of her due process rights was properly chargeable to the District).[8]  This Court therefore denies Defendants' request to dismiss Mr. Kenyon's § 1983 due process claims against APS and the Board.

## II.     Plaintiff's Breach of Contract Claim (Count III)

Defendants argue that Count III should be dismissed (1) because there was no breach of contract, as Plaintiff's contract provided that he could be discharged for cause and the Board found good cause for Mr. Kenyon's discharge and (2) because even assuming there was a breach

---

[8]  This Court notes that Defendants also argue that Superintendent Harris had ultimate authority over personnel decisions pursuant to NMSA 1978, § 22-5-14(B)(3).  Assuming, without deciding, that Defendants are correct, this does little to aid their position as to the extent Superintendent Harris is a final policymaker, his actions would be chargeable to APS.  *Cf. Milligan-Hitt v. Bd. of Trs.*, 523 F.3d 1219, 1227-29 (10th Cir. 2008) (superintendent was not the final policymaker as to hiring decisions for the school district and therefore the district was not liable for his wrongdoing where, pursuant to Wyoming law and the school board's policy, the "ultimate authority to hire employees and to decide what rules govern hiring" was retained by the school board).

of contract, Plaintiff has suffered no damages.

As to Defendants' first argument, this Court finds that Mr. Kenyon has adequately alleged a breach of the contract by APS.  As noted above, Mr. Kenyon specifically alleged that paragraph 3 of his contract provides that the contract is "subject to applicable laws of the State of New Mexico and the existing rules and regulations of the State Secretary of Education and local Board of Education" and that it "may be canceled by the District for cause . . . provided that cancellation is effected only in accordance with New Mexico state statutes and applicable rules and regulations of State Secretary of Education and local Board of Education."  (Doc. 1 at ¶ 30 & Ex. 1).  Mr. Kenyon further avers, among other things, that the cancellation of his contract did not proceed in accordance with New Mexico state statutes and applicable rules and regulations. Specifically, in paragraph 32 of his Complaint, Mr. Kenyon avers that pursuant to NMSA 1978, § 22-10A-30 and NMAC § 6.69.2.8, "uncorrected unsatisfactory work performance is good cause for discharging licensed school personnel only if the employee has been provided with two work conferences."  (Doc. 1 at ¶ 32).

NMSA 1978, § 22-10A-30 provides, in relevant part, that "[t]he state board [department] shall prescribe by regulations procedures to be followed by a local school board or the governing authority of a state agency in supervising and correcting unsatisfactory work performance of certified school personnel before notice of intent to discharge is served upon them."  The regulations that have been adopted, in turn, require that certain procedures "be followed by local school boards . . . in supervising and correcting unsatisfactory work performance of licensed school personnel before serving them with notice of intent to discharge," including that "[t]wo or more conferences shall have been held with licensed school personnel charged with unsatisfactory work performance."  N.M. Admin. Code § 6.69.2.8.  The regulations further

provide that "[s]uch conferences shall be held with the individual's immediate supervisor and such other persons as the local board or governing authorities of state agencies may designate," that "[s]ufficient time shall have elapsed between the conferences to allow the licensed school personnel to correct the unsatisfactory work performance and to have been observed for an adequate time in the discharge of his or her duties," and that "[a] written record of all conferences shall be made, specifying the areas of uncorrected unsatisfactory work performance, all action suggested by the school or agency administration which might improve such performance, and all improvements made." *Id.*

Mr. Kenyon's Complaint sets out facts that, if true, would establish that Mr. Kenyon was not provided with conferences or an opportunity to correct any alleged deficiencies with his performance. (Doc. 1 at ¶¶ 35-76, 103). According to the Complaint, the missed bond payments were discovered on February 2, 2009 and on February 6, 2009, Mr. Kenyon was suspended by Superintendent Harris and escorted off the premises, though Superintendent Harris had not previously communicated to Mr. Kenyon any dissatisfaction with his performance. (*Id.* at ¶¶ 35, 62-65). Later that same month, Mr. Kenyon requested his reinstatement, but was informed that Superintendent Harris was recommending that he be discharged. (*Id.* at ¶¶ 72-76). Accordingly, this Court finds that Mr. Kenyon has sufficiently averred that APS breached the contract by removing Mr. Kenyon from his contracted position as Director of Business and Finance in violation of the procedures set forth in New Mexico statutes and applicable rules and regulations.

As to Defendants' second argument, Defendants contend that because Mr. Kenyon received the same salary after his reassignment, he suffer no damages and thus his breach of contract claim must fail. Mr. Kenyon, however, alleges that he suffered financially as a result of his reassignment, which required that he works from home, as "he must pay from his salary all

expenses he incurs in the maintenance of his home office including all taxes, insurance, and utility costs."  (Doc. 1 at ¶¶ 138, 163).  Though Defendants acknowledge that Mr. Kenyon alleges that he had to bear the expense of maintaining a home office, Defendants contend that the contract did not provide him a right to employment outside the home.  While, as noted above, Alamogordo Board of Education Policy allows an employee to be reassigned to another work site, *see* Alamogordo Board of Education Policy § 5.19, in his Complaint, Mr. Kenyon alleges that "[a]t no time previously had any Alamogordo Public School District employee been required to work from his own home and provide and pay for his office accommodations."  (Doc. 1 at ¶ 112).  In other words, this was not a typical work site reassignment, nor one that would have occurred absent the events that gave rise to this dispute.  Finally, this Court notes that Mr. Kenyon's contract lists "Position Location: Business and Finance."  (*Id.* at Ex. 1).  Accordingly, this Court finds that Mr. Kenyon's allegations as to damages are sufficient to survive Defendants' Motion to Dismiss.[9]

### III.   Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing Claim (Count IV)

Defendants argue that Count IV fails because NMSA 1978, § 37-1-23(A) prevents a plaintiff from maintaining a cause of action for a breach of the covenant of good faith and fair dealing against a public entity.  Section 37-1-23(A) provides that "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract."  "Section 37-1-23(A) is designed as a prophylactic measure to protect the public

---

[9]  While Defendants cite *Torrance County Mental Health Program, Inc. v. New Mexico Health & Environment Department*, 830 P.2d 145, 153 (N.M. 1992), for the proposition that punitive damages are unavailable for a breach of contract claim against the state, Plaintiff's Complaint does not request punitive damages against APS or the Board.  (Doc. 1 at p. 26).

treasury.  To protect the taxpayer, the statute puts the risk of loss on those seeking promises from government; it requires at a minimum that they obtain a valid written contract in order to maintain a lawsuit to enforce those promises." *Univ. of N.M. Police Officer's Ass'n v. Univ. of N.M.*, 120 P.3d 442, 447 (N.M. 2005) (citation omitted).  The Supreme Court of New Mexico has recognized that "the State is immune from liability in quantum meruit, implied contract, or unjust enrichment." *Eaton, Martinez & Hart, P.C. v. Univ. of N.M. Hosp.*, 934 P.2d 270, 272-73 (N.M. 1997).  "Although New Mexico courts have held that the state is immune from implied-contract suits, the question remains open whether it is possible to sue a state entity for breach of the covenant of good faith and fair dealing." *Isengard v. N.M. Pub. Educ. Dep't*, No. CIV 08-0300, 2009 WL 2105947, at *6 (D.N.M. June 16, 2009); *see also Moriarty Mun. Sch. v. Pub. Sch. Ins. Auth.*, 34 P.3d 124, 130 (N.M. App. 2001) (declining to decide whether claims for breach of the implied covenant of good faith and fair dealing could be pursued in face of § 37-1-23).

The Supreme Court of New Mexico recognizes:  "Whether express or not, every contract imposes upon the parties a duty of good faith and fair dealing in its performance and enforcement." *Watson Truck & Supply Co. v. Males*, 801 P.2d 639, 642 (N.M. 1993).  "Broadly stated, the covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Id.* (internal quotation marks omitted).  The covenant of  good faith and fair dealing, however, cannot be used to "override express provisions addressed by the terms of an integrated, written contract." *Melnick v. State Farm Mut. Auto. Insu. Co.*, 749 P.2d 1105, 1110 (N.M. 1988).

In light of the New Mexico Supreme Court's recognition that every contract imposes a duty of good faith and fair dealing in its performance and enforcement, this Court believes that

were this issue before the New Mexico courts, the New Mexico courts would likely find that a cause of action for breach of the covenant of good faith and fair dealing against the state is not barred by § 37-1-23(A) where, as here, there is a written contract and where the covenant of good faith and fair dealing is not inconsistent with any term in the written contract.

Finally, Defendants asserts that Plaintiff's allegations—namely, that Superintendent Harris breached the covenant of good faith and fair dealing by withholding information from Mr. Kenyon regarding missed bond interest payments—are insufficient.  Defendants contend that in light of the fact that Plaintiff admits that Superintendent Harris had previously asked Mr. Kenyon if the bond payments had been made and was inaccurately informed that they were (Doc. 1 at ¶¶ 51-52), Superintendent Harris "was understandably reluctant to communicate any further information to Plaintiff."  (Doc. 23 at p. 15).  However, as noted above, there are specific provisions that require that a certified school employee be allowed to correct unsatisfactory work performance.  Additionally, Mr. Kenyon has not just alleged that Superintendent Harris withheld information, but also that he acted improperly in removing him from his position and in requiring that he perform the job duties of Director of Grants Administration from his home, depriving him of certain benefits he was due under the contract, including the right to continued employment in his position as Director of Business and Finance, the right to receive the full benefit of his contracted salary without a reduction for costs incurred in operating a home office, and the right to supervision and correction procedures for unsatisfactory performance. (Doc. 1 at

¶ 169; *see also id.* at ¶¶ 108-30).  Accordingly, this Court denies Defendants' Motion to Dismiss as to Count IV.[10]

IV.    **Plaintiff's Due Process Claim Under the New Mexico Constitution (Count V)**

Finally, this Court finds that Count V, which seeks declaratory judgment that Defendants deprived Mr. Kenyon of his protected property interests without due process of law as required by Article II, § 18 of the Constitution of the State of New Mexico, should be dismissed.  "A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability from a past act." *Lawrence v. Kuenhold*, 271 F. App'x. 763, 766 (10th Cir. 2008) (unpublished); *see also  Copar Pumice Co. v. Morris,* No. CIV 07-0079, 2009 WL 5201799 (D.N.M. Oct. 23, 2009).  Here, the alleged due process violation—Mr. Kenyon's removal from his position without proper procedural due process—is a past harm and there is no allegation that the due process violations are likely to be repeated in the future.

<u>**CONCLUSION**</u>

**IT IS THEREFORE ORDERED** that the claims against Defendants Dr. Allan Rickman, Rhonda S. Cross, Michael Harris, and Judy Jones contained in Count I of Plaintiff's Complaint are dismissed.  Defendants' Motion to Dismiss is denied, however, to the extent that it seeks dismissal of the claims against APS and the Board set forth in Count I.

---

[10]  In their reply brief, Defendants raise new arguments regarding the sufficiency of Mr. Kenyon's claim for breach of the covenant of good faith and fair dealing, including that it sounds in tort and is thus barred by the Tort Claims Act and that Mr. Kenyon was never deprived of any benefit of the bargain.  As these issues have not been fully briefed, the Court declines to consider them at this stage.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss is denied as to the claims in Counts II, III and IV.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss is granted as to Count V, which is hereby dismissed.

DATED this 30th day of September, 2010.

_____
**MARTHA VÁZQUEZ**
**UNITED STATES DISTRICT JUDGE**


Attorney for Plaintiff:
    Rebekah Anne Scott Courvoisier, Esq.

Attorney for Defendants:
    Elizabeth L. German, Esq.
    Robert Michael Hughes, Esq.