IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WARD W. KENYON,

        Plaintiff,

v.                                                No. 2:09-cv-1126 MV/LAM

ALAMOGORDO MUNICIPAL SCHOOL
DISTRICT NUMBER ONE, aka, ALAMOGORDO
PUBLIC SCHOOL DISTRICT, et al.

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 30), which seeks summary judgment in Plaintiff's favor as to his due process claims (Counts I, II and V) and breach of contract claim (Count III). In a Memorandum Opinion and Order addressing Defendants' Motion to Dismiss on the Basis of Qualified Immunity and Other Grounds entered concurrently herewith, this Court dismissed Plaintiff's § 1983 due process claims against the individual defendants (a portion of Count I), as well as his due process claim seeking declaratory judgment that Defendants violated the Constitution of the State of New Mexico (Count V). Thus, the only remaining claims for which summary judgment is being sought are Plaintiff's § 1983 due process claims against Defendants the Alamogordo Public School District ("APS") and the Alamogordo Board of Education ("the Board") and Plaintiff's breach of contract claim. For the reasons set forth more fully below, this Court denies Plaintiff's Motion for Partial Summary Judgment as to these claims.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "In ruling on summary judgment, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1287 (10th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

I.      **Plaintiff's § 1983 Due Process Claims**

This Court finds that Mr. Kenyon has not established that he is entitled to summary judgment as to his § 1983 due process claims. "To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded." *Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1162 (10th Cir. 2007).

As discussed more fully in this Court's Memorandum Opinion and Order addressing Defendants' Motion to Dismiss on the Basis of Qualified Immunity and Other Grounds, though Mr. Kenyon was removed from his position as Director of Business and Finance, he remained employed by APS as Director of Grants Administration. Accordingly, the relevant inquiry is not whether Mr. Kenyon had a property interest in his employment, but whether he had a property interest in his position as Director of Business and Finance and whether he was deprived of that interest without adequate due process of law.

This Court finds that even assuming, without deciding, that Mr. Kenyon had a property interest in his position, he has not established that he was denied due process as a matter of law. The law regarding the level of due process required is set out more fully in this Court's

Memorandum Opinion and Order addressing Defendants' Motion to Dismiss on the Basis of Qualified Immunity and Other Grounds, accordingly the Court need not repeat it in detail here. Instead, this Court reiterates that "[a]n essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted).  In the context of government employment, this principle generally requires that, at a minimum, an employee with a protected property interest in his or her employment receive notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story prior to discharge. *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009).  Though some type of pretermination hearing is required, it need not be elaborate; the formality and procedural requisites for the pretermination hearing will vary, depending upon the importance of the interests involved and the nature of any subsequent proceedings. *Loudermill*, 470 U.S. at 545; *see also West v. Grand Cnty.*, 967 F.2d 362, 367 (10th Cir. 1992) (noting that the Court has held as sufficient a pretermination warning and an opportunity for a face-to-face meeting with supervisors).  In most instances, a post-termination hearing will also be required. *Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1255 (10th Cir. 2005).  Just as a pretermination hearing must be assessed in light of the post-termination procedure available, so too must a post-termination hearing be viewed in light of the pre-termination procedures it follows. *Id.*  It should be remembered that due process is flexible and calls for such procedural protections as the particular situation demands. *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).

 Before turning to the specific due process violations Mr. Kenyon advances in support of his Motion for Partial Summary Judgment, this Court first must address two preliminary matters:

whether Mr. Kenyon was denied an opportunity to appeal the Board's decision on Superintendent Harris's recommendation of discharge and the nature of the property interest at stake.

As to the first of these preliminary matters, there is no dispute that Mr. Kenyon received written notice of the reasons for Superintendent Harris's recommendation of discharge and was provided an evidentiary pre-discharge hearing before the Board pursuant to NMSA 1978, § 22-10A-27, at which he was represented by counsel, permitted to cross-examine the witnesses offered by his employer, and allowed a certain amount of time to present his side of the story (though he contends the time was inadequate). (Doc. 1 at ¶¶ 75-76, 95-100). Additionally, had the Board issued a written decision stating that it was "discharging" Mr. Kenyon from APS's employment, there is no question but that Mr. Kenyon would have had the right to appeal the decision to an independent arbitrator pursuant to NMSA 1978, § 22-10A-28. Section 22-10A-28 provides in relevant part that "[a] certified school employee aggrieved by a decision of a local school board or governing authority to discharge him after a discharge hearing held pursuant to Section 22-10-17 NMSA 1978 [recompiled as § 22-10A-27] may appeal the decision to an independent arbitrator" and gives the aggrieved employee five working days from receipt of the local school board's written decision to submit his or her notice of appeal. Mr. Kenyon contends, however, that he was denied any opportunity to appeal the Board's decision as it did not indicate that Mr. Kenyon was being discharged.

The Board issued its decision on Superintendent Harris's recommendation of discharge in an open meeting on June 17, 2009 and in a written decision issued on June 24, 2009. (Doc. 1 at ¶ 101; Doc. 19 at ¶ 101). In its written decision, the Board found that Superintendent Harris had "demonstrated by the preponderance of the evidence that just cause exists for the discharge

4

of Mr. Kenyon pursuant to NM Statutes Annotated Section 22-10A-27." (Doc. 31-3 at Ex. 4).  It also found, however, that "Mr. Kenyon had rights to supervision and correction procedures pursuant to NM Statutes Annotated 22-10A-30." (*Id.*).  Accordingly, it was "the conclusion of the Board that Mr. Kenyon remain employed by the Alamogordo Public Schools subject to any and all terms and conditions set forth by the Superintendent." (*Id.*).  In support of his Motion for Partial Summary Judgment, Mr. Kenyon has submitted an affidavit stating that it was his "understanding from the Board's decision that [he] would be allowed to resume [his] duties" and "would be placed on a growth plan as is provided for in School Board policy." (Doc. 31-2 at Ex. 1 at ¶ 9).  He further contends that it was not until his meeting with Superintendent Harris, which took place on July 20, 2009 (well after the five-day window for filing a notice of appeal), that he first learned that he would not be allowed to return to work as Director of Business and Finance and would not be working from an office in an APS building. (*Id.* at ¶ 10).  According to Mr. Kenyon, he was effectively foreclosed from appealing the Board's decision both because it was not "a decision of a local school board or governing authority to discharge him" as required by NMSA 1978, § 22-10A-28(A) for the right of appeal to attach and because he did not understand the full import of the decision until after the time to seek review had expired.  Without speculating as to what might have happened if Mr. Kenyon had attempted to appeal the Board's decision, this Court finds that Mr. Kenyon has offered a credible explanation of why he did not appeal.  However, even if this Court assumes, without deciding, that the Board's decision foreclosed any post-termination appeal, this, in and of itself, does not establish a due process violation.  Rather, where a pretermination hearing is the only hearing afforded to an individual, the due process inquiry is governed by the more stringent requirements generally applied to post-termination hearings.  *McClure v. Indep. Sch. Dist*, 228 F.3d 1205, 1211 (10th Cir. 2000).  The

question still remains whether the single hearing that was afforded to Mr. Kenyon provided him procedural safeguards that were appropriate to the nature of the case.

As to the second preliminary matter, this Court notes that while Mr. Kenyon was deprived of his position as Director of Business and Finance and was required to work from home, he was not discharged from employment at APS. At all times, he remained employed and continued to receive the same salary. Accordingly, Mr. Kenyon's interest is something less than his interest in employment. *See Gilbert*, 520 U.S. at 931-32 (recognizing that in determining what process is constitutionally due, courts must balance (1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest); *Hulen v. Yates*, 322 F.3d 1229, 1244 (10th Cir. 2003) (recognizing "the transfer of an employee certainly requires no more procedural safeguards than a termination").

With these two preliminary matters in mind, this Court turns to the alleged due process violations Mr. Kenyon advances in support of his Motion for Partial Summary Judgment.

First, Mr. Kenyon argues that he was denied a meaningful hearing as the Board had decided prior to the hearing to discharge Mr. Kenyon. As evidence to support this contention, Mr. Kenyon relies on Defendants' admission that prior to the hearing on Superintendent Harris's recommendation of discharge, John Warfield was hired to fill the full-time, permanent position of Business and Finance Coordinator, a job which incorporated the duties previously performed by Mr. Kenyon as the Director of Business and Finance. (Doc. 1 at ¶¶ 79 & 81-83; Doc. 19 at ¶¶ 79 & 81-83). In opposition to Mr. Kenyon's Motion for Partial Summary Judgment, however, Defendants submitted evidence that though Mr. Warfield began work on March 23,

2009 (after Mr. Kenyon was placed on paid leave pending a determination on Superintendent Harris's recommendation of discharge and prior to the June 8, 2009 Board hearing), he did so initially without a contract. At the time, Superintendent Harris understood that Mr. Kenyon's discharge hearing was scheduled for April 20, 2009. On May 12 or 13, 2009, Superintendent Harris signed a short-term contract with Mr. Warfield; the contract secured Mr. Warfield's employment only through June 30, 2009. At the time Superintendent Harris signed the May contract, he understood that Mr. Kenyon's lawyer had requested that the hearing be postponed until later May or June. It was not until after the hearing and the Board's announcement of its decision that Superintendent Harris hired Mr. Warfield to serve as Business and Finance Coordinator for the 2009-2010 school year. (Doc. 33-2 (Superintendent Harris's Affidavit) at ¶ 8, Ex. B (May contract) & Ex. C (June contract)). Superintendent Harris further avers that he does not hold a School Business Official License and that it "was imperative that the District had a licensed School Business Official on board to fulfill the District's financial and budgeting responsibilities." (*Id.* at ¶¶ 5 & 8). In light of the evidence Defendants have submitted, this Court finds that Mr. Kenyon is not entitled to summary judgment on the basis that the hearing was merely pretextual due to APS's employment of Mr. Warfield.

Second, Mr. Kenyon challenges the impartiality of the Board proceeding based on the role of Ms. Elizalde, counsel for the Board. Specifically, Mr. Kenyon contends that "[t]he undisputed facts show that prior to the Superintendent's recommendation of the discharge of Mr. Kenyon, Superintendent Harris had consulted with Board attorney, Chris Elizalde, regarding the propriety of Mr. Kenyon's [d]ischarge" and that "Ms. Elizalde later acted as advisor to the Board on all pre-hearing motions regarding discovery and the deposing of witnesses, and as legal advisor to the Board during the hearing of June 8th." (Doc. 31 at pp. 12-13). Mr. Kenyon argues

7

that Ms. Elizalde's dual prosecutorial and adjudicatory roles deprived him of his right to an impartial tribunal.

"Impartiality of the tribunal is an essential element of due process." *Riggins*, 572 F.3d at 1112. However, this Court presumes that those serving as adjudicators act with honesty and integrity, and a substantial showing of bias is therefore necessary to overcome this presumption. *Id.* Moreover, as Mr. Kenyon himself recognizes (Doc. 31 at p. 13), case law generally rejects the idea that a combining of adjudicatory and investigatory functions in the same personnel is a denial of due process. *Withrow v. Larkin*, 421 U.S. 35, 52 (1975); *see also Riggins*, 572 F.3d at 1112-15 (fact that same individuals who approved the initial recommendation to terminate employee presided over subsequent hearings was insufficient to establish a constitutional violation).

Here, Mr. Kenyon has not submitted sufficient evidence to establish bias due to Ms. Elizalde's involvement. This Court notes that Mr. Kenyon's Statement of Material Facts Not in Dispute makes no mention of Ms. Elizalde's alleged involvement in consulting with Superintendent Harris prior to his recommendation of discharge. (Doc. 31 at pp. 1-6). Moreover, the only evidence cited by Mr. Kenyon that even mentions Ms. Elizalde's prior consultation with Superintendent Harris comes from an objection made by Mr. Kenyon's counsel at the beginning of the Board hearing in which counsel states: "Ms. Elizalde was the individual who Dr. Harris, through Judy Jones, contacted to see if Mr. Kenyon could be suspended. There is no way Mr. Kenyon can get a fair hearing with Mrs. Elizalde advising this Board in any way, shape or form regarding Mr. Kenyon and I would ask that she be excused." (Doc. 31-3 at Ex. 3 at 9:21-25). Beyond this conclusory assertion from counsel that Ms. Elizalde was consulted by Superintendent Harris through Judy Jones, there is simply nothing in the record that would allow

this Court to objectively assess the scope of her prior involvement.  Further, there are no statements attributed to Ms. Elizalde showing bias.  Additionally, at the initiation of the Board hearing, Ms. Elizalde explicitly stated that her role at the hearing was to assist the Board as to procedural issues and to advise the Board on questions of law and that her "purpose [was] not to advise the [B]oard on the ultimate issue pending before the Board." (*Id.* at 9:8-16).  As she explained to those present at the hearing:  "[I]t is not my role to determine whether just cause exists, that's within the purview of the Board's authority." (*Id.*).  In light of the evidence presently before this Court, Mr. Kenyon has not established that Ms. Elizalde's involvement in the Board proceedings deprived him of his right to an impartial tribunal.[1]

   Mr. Kenyon also briefly asserts in one sentence, with no citation to supporting evidence, that "[t]he issue of bias is also raised by the participation of Defendant, Board Member Cross, in the decision on whether she should be deposed and subpoenaed as a witness." (Doc. 31 at p. 14).  Mr. Kenyon, however, has provided no evidence that Ms. Cross participated in that decision.  The letter denying Mr. Kenyon's request to depose Ms. Cross was prepared by Ms. Elizalde and states that she consulted with the Board President, Dr. Rickman, regarding the matters addressed in the letter.  (Doc. 31-2 at Ex. 1-D).  Moreover, based on the evidence submitted by Mr. Kenyon, it appears that Ms. Cross (though believing she could be impartial) asked to be, and was, recused from the Board hearing in order to avoid any appearance of unfairness.  (Doc. 31-3 at Ex. 3 at 6:11-7:10).  Accordingly, this Court does not find that Mr. Kenyon has established

---

[1] While Mr. Kenyon relies on *Pike v. Gallagher*, 829 F. Supp. 1254, 1272-73 (D.N.M. 1993), *Pike* is distinguishable in that the same person who provided legal advise to the board presiding over the termination hearing in *Pike* also acted as the prosecutor during the hearing, presenting the case to the board.  Here, Superintendent Harris and APS were represented by separate counsel at the Board hearing, Ms. Elizabeth German, who presented their case to the Board.

that he was denied an impartial hearing based on the alleged involvement of Ms. Cross.

Third, Mr. Kenyon contends that he was denied due process because he was not allowed to depose Ms. Cross or to subpoena her as a witness. Defendants do not dispute that Plaintiff sought to depose Ms. Cross, a Board Member, and that his request was denied. (Doc. 31-2 at Ex. 1-D; Doc. 33 at pp. 5-6). Defendants, however, contend that her alleged involvement was minimal. It is undisputed that Ms. Cross was alerted of the missed bond payments by either Judy Jones of Carmen Spann, that she conveyed her concerns regarding the missed payments to Superintendent Harris, and that she reviewed the bond book (the schedule of bond payments) with Mr. Kenyon after the missed bond payments came to light. (Doc. 1 at ¶¶ 49-50, 55-56; Doc. 19 at ¶¶ 49-50, 55-56). Mr. Kenyon contends that Ms. Cross "would, potentially, have been able to give testimony regarding the documentation contained within the District's 'bond book.'" (Doc. 31 at p. 14).

"While not necessary in every case, procedural due process often requires confrontation and cross-examination of those whose words deprive a person of his livelihood." *West*, 967 F.2d at 369 (internal quotation marks omitted). Whether due process requires that a terminated employee be offered the right to cross-examine or confront witnesses "depends upon the significance and nature of the factual disputes at issue." *Id.*

Here, Mr. Kenyon has not established on the present record that the denial of the opportunity to confront Ms. Cross deprived him of due process. This is not a case where Ms. Cross presented testimony adverse to Mr. Kenyon and there is no dispute but that Mr. Kenyon was allowed to cross-examine all the witnesses called by APS. Nevertheless, Ms. Cross could have potentially offered testimony confirming Mr. Kenyon's contention that the missed bond payments were not reflected by the bond book and that he was therefore unaware of

the missed payments and had not been dishonest with Superintendent Harris when he reported that the bond payments had been made.  To the extent that Mr. Kenyon's honesty was called into question at the Board hearing, Ms. Cross's potential testimony was arguably quite significant.  However, in support of his Motion for Partial Summary Judgment, Mr. Kenyon has presented only extremely limited excerpts from the Board hearing, none of which establish the significance or relevance of Ms. Cross's potential testimony in light of the issues and evidence presented at the hearing.  In arguing the importance of Ms. Cross's potential testimony, Mr. Kenyon contends that during Superintendent Harris's deposition, the Superintendent called into question Mr. Kenyon's honesty, explaining that he felt like Mr. Kenyon may have lied to him regarding the bond payments.  (Doc. 31-3 at Ex. 2 at 86:3-16).  While charges of dishonesty and deception may well be more significant and more likely to require confrontation, this Court notes that the excerpts cited by Mr. Kenyon are from Superintendent Harris's deposition and not the Board hearing.  As this Court cannot assess the degree to which Mr. Kenyon's honesty was placed at issue during the Board hearing, this Court concludes that on present record, Mr. Kenyon has not established, as a matter of law, that the denial of the opportunity to cross-examine Ms. Cross deprived him of due process.  *Cf. McClure*, 228 F.3d at 1211-12 (use of affidavits at termination hearing improper where charges went to school principal's morality and ethics).

     Finally, Mr. Kenyon contends that he was denied a meaningful hearing due to the time constraints placed upon the hearing.  It is undisputed that Mr. Kenyon (like Superintendent Harris) was allowed two and one-half hours to present his case, including making an opening statement, cross-examining the witnesses called by Superintendent Harris, and presenting his own evidence.  While Mr. Kenyon's affidavit discusses the complexity of the budgeting process and states that he "did not have enough time [at the hearing] to explain the budgeting process,

the state mandated reasons for including specific amounts in the budget, the likely cause of apparent shortfalls in the budget, and particular information regarding allegations that I had improperly approved purchase orders" (Doc. 31-2 at Ex. 1 at ¶¶ 2-7), Mr. Kenyon has not submitted a complete transcript of the hearing, nor any excerpts related to the substantive evidence presented by Superintendent Harris.  Accordingly, based on the present record, this Court is not in a position to assess whether the time limitations deprived Mr. Kenyon of due process.

Accordingly, for the foregoing reasons, this Court will deny Mr. Kenyon's request for summary judgment as to his § 1983 due process claims against APS and the Board.

## II.     Plaintiff's Breach of Contract Claim

This Court also declines to grant summary judgment in Plaintiff's favor as to his breach of contract claim as it finds Mr. Kenyon has not presented evidence of damages stemming from the alleged breach of contract.  *See, e.g., Joplin v. Sw. Bell Tel. Co.*, 753 F.2d 808 (10th Cir. 1983) (affirming district court's grant of summary judgment on contract claim where plaintiff would have no damages for breach of contract); *Jaynes v. Strong-Thorne Mortuary, Inc.*, 954 P.2d 45, 50 (N.M. 1998) (affirming trial court's grant of summary judgment since there were no damages arising from the breach of contract).  While this Court found that Plaintiff had sufficiently alleged that he suffered a financial loss as a result of the alleged breach of contract to overcome Defendants' Motion to Dismiss, it does not find that Plaintiff has presented admissible evidence of damages in support of his Motion for Partial Summary Judgment.

Following his reassignment, Plaintiff received the same salary and benefits.  (Doc. 33-4 at Ex. C at ¶ 5).  The only fact in Plaintiff's Statement of Material Facts Not in Dispute that is related to Plaintiff's claim that he was damaged is Fact No. 26, which alleges that as a District

Grant Writer, Mr. Kenyon was required to work from his own home with no office or work space to be provided in any APS building. (Doc. 31 at p. 5). Plaintiff, however, has submitted no admissible evidence that would establish he suffered financial harm as a result of being required to work from home.[2]

In support of his contention that he suffered a financial loss, Mr. Kenyon cites provisions of the Internal Revenue Code that allow him to deduct a pro rata portion of certain expenses related to his residence—such as rent, taxes, and utilities—from his gross income now that he is required to work from home, as well as Internal Revenue Code provisions allowing the deduction of travel expenses he incurs commuting from his primary business location to APS offices and schools. He argues that as his gross income for tax purposes is reduced by these expenses, he has suffered a loss. The Court, however, finds that this conclusion does not necessarily follow. While it is possible that Mr. Kenyon may incur additional costs as a result of operating an office from his home (for example, increased utility bills), it is also possible that there is little, if any, change in his expenses and that he actually benefits financially from working from home as he receives the same salary, but is obligated to pay less tax as a result of certain deductions that he is now allowed to take. Likewise, though Mr. Kenyon now must commute to an APS office for meetings, he presumably saves expenses in not having to travel to and from the office everyday.

As the record submitted in support of Mr. Kenyon's Motion for Partial Summary Judgment is void of any admissible evidence regarding damages, the Court simply cannot assess at this stage whether Mr. Kenyon has suffered any damages as a result of the alleged breach of

---

[2] While the Supplemental Affidavit of Ward Kenyon was directed to these issues, it was withdrawn by Mr. Kenyon. (Docs. 37-2 & 39).

contract. Accordingly, the Court will deny Plaintiff's request for summary judgment as to his breach of contract claim.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 30) is **DENIED**.

DATED this 30th day of September, 2010.

_____
**MARTHA VAZQUEZ**
**UNITED STATES DISTRICT JUDGE**

Attorney for Plaintiff:
    Rebekah Anne Scott Courvoisier, Esq.

Attorney for Defendants:
    Elizabeth L. German, Esq.
    Robert Michael Hughes, Esq.